GEORGE K. BARNES AND JEAN S. BARNES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barnes v. Commissioner
Docket No. 14038-89
United States Tax Court
T.C. Memo 1992-275; 1992 Tax Ct. Memo LEXIS 296; 63 T.C.M. (CCH) 2999; May 13, 1992, Filed *296 Decision will be entered under Rule 155. George K. Barnes, pro se. Carmino Santaniello, for respondent. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was heard pursuant to section 7443A. [1]
Respondent determined a deficiency in petitioner's [2] Federal income tax for the 1986 taxable year in the amount of $ 3,320. Respondent also determined that petitioner was liable for additions to tax under section 6653(a)(1)(A) and (B), in the respective amounts of $ 155 and 50% of the interest due on the statutory deficiency of $ 3,320. *297 After concessions [3] by petitioner, the issues for decision are whether petitioner understated his income from VIVALP USA, Inc. during the 1986 taxable year, and whether petitioner is liable for additions to tax for negligence. Petitioner resided in New Canaan, Connecticut, at the time he filed his petition in this case. On March 1, 1986, petitioner was employed by VIVALP USA, Inc. (VIVALP) as the President and Chief Executive and Administrative Officer of the corporation. VIVALP marketed and distributed cooking utensils and food preparation machines manufactured by VIVALP S.A., a French corporation with principal offices in Rumilly, France. VIVALP was the U.S. affiliate of the French corporation. On or about March 1, 1986, petitioner, VIVALP, and Vivalp, S.A. organized Housewares *298 International, Inc. (Housewares) to market and distribute food processors in the United States. Petitioner's salary was $ 100,000 yearly ($ 4,166.67 per pay period). During 1986, VIVALP had 24 pay periods and employees received paychecks twice monthly. It appears that petitioner was paid every 2 weeks. Disputes arose between petitioner and VIVALP, S.A. over petitioner's management of VIVALP and Housewares. The employment relationship between petitioner and VIVALP soured and petitioner was dismissed from his position on November 15, 1986. On November 18, 1986, petitioner opened an account at New Canaan Bank and Trust (NCBT) in the name of "Housewares International/VIVALP." The opening deposit into the NCBT account consisted of 17 checks payable to VIVALP in the total amount of $ 11,923.34. During November 1986, petitioner drew on the NCBT account and issued 2 checks to himself to cover his salary for pay periods ending October 31, November 15, and November 30, 1986. After these transactions, petitioner transferred $ 3,000 of the remaining funds to a VIVALP account at the Connecticut Bank and Trust Company. On January 5, 1987, petitioner, VIVALP, and VIVALP S.A. signed a settlement *299 agreement. The terms of that agreement required petitioner to return the salary paid for the period after November 15, 1986. Petitioner honored those terms sometime later in the month. The controversy in this case concerns the actual amount of wages VIVALP paid petitioner during 1986. Petitioner reported income on the cash receipts and disbursements method of accounting. On Form W-2, VIVALP reported to the Internal Revenue Service that petitioner earned wages in the amount of $ 79,503.77 and that the corporation withheld $ 24,756.85 for taxes during 1986. On his return, petitioner reported wages from VIVALP in the amount of $ 74,503.86 and claimed the full amount of the federal income tax withholding credit as calculated by VIVALP. At trial, petitioner could not explain how he calculated his VIVALP income as reported on the return. Petitioner had a copy of the Form W-2 at the time he filed his 1986 joint return, and he did not question VIVALP as to its accuracy. VIVALP's payroll ledger was used to prepare the Form W-2 issued to petitioner. Until July, 1986, the payroll ledger was maintained by Robert de Giverny. Petitioner fired Mr. de Giverny at the end of June and he *300 was replaced by Branka Hlade. The payroll ledger consists solely of two sheets of paper with handwritten entries. The first page contains VIVALP's payroll record for petitioner from July 2 through November 30, 1986, and it lists salary payments, dates, check numbers, gross pay amounts, deductions from pay, and net pay amounts. This page was prepared by Ms. Hlade. Mr. de Giverny prepared the second page of the payroll ledger. The second page lumps all earlier payments into the first fiscal quarter and omits check numbers. The payroll ledger alone does not accurately reflect petitioner's VIVALP wage earnings. Respondent determined that petitioner received either $ 79,503.77 or $ 83,670.27 [4] of wage income from VIVALP, based on VIVALP's records. Based on his accounting, petitioner contends that he received not more than $ 74,503.86. [5] Both VIVALP's books (upon which respondent relies) and petitioner's accounting are riddled with inconsistencies and incomplete. For the most part, we disregard both. *301 In this regard, it does appear that petitioner received approximately $ 4,611, every 2 weeks. [6] In 1986 from the first of March until the end of November, there were nineteen 2-week periods. After observing petitioner as a witness, we are confident that he had no intention of not being paid all to which he was entitled. We, accordingly, find that petitioner received $ 79,154 [19 x $ 4,611] from VIVALP during 1986. In so determining, we *302 recognize that there are checks and/or book entries that indicate that petitioner received sometimes more and sometimes less than the $ 4,611. We also recognize that there are checks and/or entries that indicate that petitioner was paid more or less frequently than the 2-week period. Finally, we also recognize that petitioner was forced to disgorge the amounts he received for the period after November 15, 1986. The agreement to make that payment and the payment did not occur until after the close of the taxable year, and there is no basis for reducing petitioner's 1986 taxable income. See . As a final matter, we must decide if additions to the tax for negligence are appropriate. Section 6653(a)(1)(A) provides for an addition to the tax in an amount equal to 5 percent of the underpayment of tax. Section 6653(a)(1)(B) provides for payment of additional tax equal to 50 percent of the interest payable with respect to the portion of underpayment attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. *303 . Negligence frequently takes the form of failure to report income. Although understatement of income in and of itself does not establish negligence, it is evidence of negligence, which the taxpayer fails to controvert at his peril. The additions to tax are based in part upon petitioner's admitted failure to report substantial amounts of income. See supra n.3. Petitioner has shown no reason why additions to tax are not in order with respect to matters conceded. With respect to the portion of the underpayment attributable to the VIVALP wage income, additions to tax also are appropriate. Petitioner was less than prudent when he selectively read and utilized the figures reported on the Form W-2 issued by VIVALP. Despite insisting that the Form W-2 was inaccurate with respect to his gross wages, petitioner did not attempt to verify income. Nonetheless, he claimed the full amount of the withholding credit based on that statement. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The dispute focuses on the income of George K. Barnes, and, for simplicity, we will refer to him as petitioner.↩
3. Petitioner concedes that he received $ 2,904 in taxable income, in the following amounts, which he failed to report: $ 123 of interest income; $ 1,555 of dividend income; $ 266 of pension income; and $ 960 of nonemployee compensation.↩
4. About 2 months after the conclusion of the trial, respondent sought to increase both the deficiency in tax, from $ 3,320 to $ 5,069, and the additions to tax. Respondent determined that petitioner earned $ 83,670.27, which is $ 4,166.50 more than the amount of wage income reported by VIVALP. The increase in gross income stems from a salary check (no. 1959), dated March 31, 1986, that was not recorded in the VIVALP payroll ledger. Petitioner received this salary check. Although we do not agree with respondent's asserted increase to the deficiency, the motion is granted. Rule 41(b). ↩
5. At trial, petitioner suggested that he only received $ 70,833.39.↩
6. Petitioner was the President the Chief Executive and Administrative Officer of VIVALP, and, as such, was responsible in part for the maintenance of corporate records. Moreover, all taxpayers, whether they be corporations or individuals, are generally required to keep sufficient records for tax purposes. Sec. 6001. The Court recognizes that it must estimate the amount of income, although the actual amount may have been greater or lesser. However, the inexactitude is of petitioner's own making, and his failure to ensure that sufficient records were kept weighs against him.↩